## UNITED STATES v. HERTER.

District Court, D. Montana. February 8, 1928.

No. 4662.

Criminal law ⬤⇒395—Intoxicating liquors ⬤⇒ 249—Search of defendant's dwelling, which was also used as distillery, held legal, and evidence obtained admissible.

Where prohibition agents, guided by the reputation of defendant's dwelling as a place where illicit liquor was made, kept, and sold, went there, and on being admitted saw bottled beer in cases and smelled fermented mash, and on search with defendant's consent found a still in operation and illicit liquors, held, that the building was a distillery as well as a dwelling, that seizure of the still and liquors was legal,

and they were admissible in evidence against defendant.

Criminal prosecution by the United States against Karl Herter. Verdict of conviction and defendant moves for new trial. Denied.

Wellington D. Rankin, U. S. Atty., of Helena, Mont.

Lester H. Loble, A. P. Heywood, and Hugh R. Adair, all of Helena, Mont., for defendant.

BOURQUIN, District Judge. Defendant, convicted of violations of the Volstead Act (27 USCA), moves for a new trial. He timely moved to suppress the evidence obtained by search of and seizure in his distillery residence, and, as is the practice in this court to save time in police court cases, the motion was heard as part of the trial; the defendant to have the benefit if the evidence was incompetent.

The evidence is that, contemporaneous with the search, the building had reputation as a place where intoxicating liquors were illicitly made, kept, and sold; that two prohibition agents, with knowledge thereof, went to the place; that one knocked, greeted defendant, who opened the door, asked if defendant had beer, was answered "no," saw in the hall 2½ open cases of usual style, containing quart bottles of beer, before and after the door was opened, was conscious of a strong odor of fermenting mash emanating from the building, stated he was after defendant's "can," asked if he could search, defendant consented, and search disclosed a still in operation, mash, and illicit liquors. Defendant disputed the consent. The court held the search and seizure lawful, and the evidence competent, for that (1) the place was a distillery, and by the revenue statutes open to inspection; (2) the odor and beer visible was of a crime in commission; and (3) defendant consented.

The Eighteenth Amendment itself prohibits manufacture, transportation, and sale of intoxicating liquors for beverage purposes, and vests power in Congress to enforce it; that is to say the Constitution creates and defines the crime, and on Congress imposes the duty to penalize it. In performance, Congress enacted the Volstead Act, attaching penalties to all the said crimes, and creating, defining, and penalizing other and incidental offenses. Various courts, however, practically construe the act to afford complete immunity to manufacture of beverage intoxicants in the home, though the still be operated as an ornament in the parlor window, in face of all the world, and that neither with nor without a warrant can the place be entered and the crime prevented.

It is true the act provides that no warrant shall issue to search a dwelling not in part devoted to business purpose, unless intoxicants are illicitly sold therein, that no search shall be had without a warrant, and that all laws in direct conflict are repealed. But a dwelling containing a distillery is in part used for business purposes. The operator is a distiller, the place a distillery, and the business is distillation, by the provisions of the internal revenue laws. Moreover, the revenue laws prohibit distilleries in dwellings, and provide for entry, inspection, gauging, assessment of taxes, and search and seizure of illicit distilleries, at any time.

Neither these laws nor the Constitution or Volstead Act can be circumvented by the strategy of camouflaging a distillery as a dwelling. The latter loses its character and privilege when converted into a distillery and a place of criminal business. When a dwelling takes on the attributes of a distillery, it also assumes its illegal status and liabilities. No statute can be found which forbids to break and enter even a dwelling to prevent a crime in commission, and without a paper warrant, the general rule of common law and not unreasonable.

These revenue laws and the general law of entry, search, and seizure to prevent crime in commission, are not in direct conflict with the Volstead Act. To hold otherwise is to impute to Congress disingenuous evasion of its duty and the Constitution, is to hamstring the Constitution and legalize what it declares illegal, is to indirectly repeal the policy of the revenue laws and of prohibition expressly created and upheld by Constitution and act, is to transfer brewery, distillery, and saloon from down town to the homes of the land— the reverse of that prohibition by the people adopted. And all this would lead to these absurd and even evil consequences, by way of repeal by unnecessary implication, to avoid which is the rule that it will be presumed exceptions were intended.

Since the act of illicit distilling is by the Constitution declared a crime, Congress has power to enforce the prohibition, but none to foster, protect, or immunize the crime. Any of its enactment to that evil end would contravene the fundamental law. Repeal, as well as enactment, might involve unconstitutionality. The difficulties of enforcing prohibition ought not to be aggravated by strained construction of Constitution and act.

In many recent cases the bootlegger has

been freed, with his still and liquors under his arm, with judicial sanction, if not blessing, to resume at the old stand. Is any one sufficiently verdant to believe that in the same circumstances a killer, with the dead body, weapons, and fruits of the murder, would have been likewise set at liberty, that the evidence would be suppressed and returned? Not unless the credulous fellow was from Coon Ridge or Pidgeon Roost. Yet the principle of search and seizure is the same in both cases.

In behalf of old John Barleycorn has been a great renaissance of learning in respect to the Fourth and Fifth Amendments, wherein has been no little forgetfulness that the Constitution is not merely to reverence, but to serve the people in everyday and common sense use, no less to punish the guilty than to protect the innocent. This forgetfulness, it is feared, is some responsible for a considerable comment that the old rascal has "friends at court," in constitutional construction perhaps "incited by resentment and private stock, as well as inspired by reason and principle."

New trial denied.